## PREBLE vs. YOUNG.

A deputy collector of the direct tax, appointed under the act of Congress of *July* 22, 1813, providing for the collection of internal taxes, was not authorized to collect the taxes imposed by the acts of subsequent years, without a new appointment and qualification.

THIS case, which was a writ of entry, came before the court upon a case stated by the parties. It was brought by one of the heirs at law of *Benjamin Preble*, to recover his proportion of the

farm of his late father, which the tenant claimed under a sale for nonpayment of the United States direct tax for 1816, by *Josiah W. Seaver* the collector of this district.

*Mr. Seaver* was appointed collector of the tax of 1813 ; and was duly commissioned and sworn. Under this commission, and without any new qualification, he acted as collector of the taxes of 1815 and 1816. In 1814, he appointed *Jedediah Goodwin* as his deputy collector, who was duly sworn ; and without any new appointment or qualification acted as deputy collector for the collection of the three taxes above mentioned. For the nonpayment of the tax of 1816, the farm was sold by the deputy, *Goodwin*, in *December* of that year, and a deed given by *Mr. Seaver*, the collector, in 1819. Prior to the sale, the deputy made no search for personal property on the farm, to distrain for the tax ; although sufficient might have been found there for that purpose ; it being his rule not to distrain, unless personal property was shewn to him by the person liable to pay the tax.

*Daniel Wood* was the principal assessor of the three taxes ; but there was no appointment of assistant assessors for the tax of 1816.

Upon these facts the validity of the title of the tenant was submitted to the court.

*W. Burleigh*, for the demandant.

*J. Holmes*, for the tenant.

WESTON. J. at the ensuing term in *Cumberland*, delivered the opinion of the court.

By the act of Congress of *July* 22, 1813, the several States were divided into collection districts, for the purpose of assessing and collecting direct taxes and internal duties. By the second section of this act, the president of the United States was authorized and empowered to appoint one collector and one principal assessor, for each collection district. And by the third section, each principal assessor was to divide his district into a convenient

Preble v. Young.

number of assessment districts, within each of which he was to appoint an assistant assessor ; and every assessor was required to take the oath, prescribed in the same section. By the act of *August* 2, 1813, a direct tax of three millions was laid and apportioned upon the United States; and by the fourth section of the last mentioned act, the tax was to be assessed and collected by the officers appointed in virtue of the act of *July*. By the act of *January* 9, 1815, to provide additional revenues for defraying the expenses of government, an annual direct tax of six millions was laid and apportioned ; and by the second section of this act, the act of *July* was repealed, except so far as the same respected the appointment and qualification of the collectors and principal assessors. By the third section of this act, provision was made for the appointment and qualification of assistant assessors, as by the act of *July*. By the act of *March* 5, 1816, so much of the act of *January*, as imposes an annual direct tax of six millions was repealed, and a direct tax of three millions, upon which the question before us arises, was substituted ; in the assessment and collection of which, all the provisions of the act of *January*, with certain exceptions, were held to apply to the assessment and collection of the tax of three millions. After the passing of this last act, the direct tax was no longer to be imposed annually ; and the tax of six millions, which, by the law of *January*, would have been assessed in 1816, was reduced to three millions. It is manifest that this last tax was to be assessed and collected in the manner and by the officers provided by the act of *January* ; and we are well satisfied that it was not necessary that the assistant assessors should be appointed and qualified anew by the act of 1816.

The case finds that the deputy collector, *Goodwin*, was appointed prior to 1815, and that he was not subsequently reappointed or commissioned. By the repeal of the act of *July* 1813, under which he was appointed, without any saving as to the office of deputy collector, his power and authority ceased. And that Congress so intended and understood it, is apparent from the fact, that the appointment of a deputy collector is distinctly and specifically provided for by the act of *January*. He was to be

appointed by an instrument, under hand and seal. The former appointment had lost its efficacy, by the repeal of the former law. Subsequent to the act of *January*, by and under which alone any authority existed for the appointment of such an officer, no appointment was made. It has been urged that the subsequent recognition of his authority by the collector, coupled with his previous appointment, brings his case sufficiently within the law. But the evidence of his appointment was to be an instrument under the hand and seal of the collector, which the deputy could at all times retain, and exhibit whenever his authority was called in question ; and this ought to have been, and was intended to be, sufficient, without any extraneous evidence. Now *Goodwin*, who assumed to act as deputy in the case before us, had no instrument under the hand and seal of the collector, except that which he received under the law of *July* 1813, and if he had to call in aid the subsequent recognition of the collector, extraneous evidence became necessary to make out his authority. If *Goodwin* had demanded of a person liable to pay, his proportion of the direct tax, the party, upon whom the demand was made, might say, satisfy me that you have authority to receive it, and that I shall be safe in paying it to you, and I will pay it. Had he thereupon produced his written commission, it might properly have been replied to him, this is under a law which has been repealed ; and is no evidence of your appointment under the existing law. *Goodwin* might thereupon affirm that his continuing authority had been recognized by the collector. Whether this affirmation were true or *false*, the party charged with the tax might have no means of ascertaining. And if the authority of the deputy was recognized by parol by the collector at one time, it might be disclaimed at another ; and both the deputy himself, and those who might make payments to him, would be subjected to great uncertainty of proof, with regard to his actual authority. This uncertainty, the law intended to prevent, by requiring that the power of the deputy should depend upon, and be proved by, an instrument under the hand and seal of the collector ; in which, from inspection alone, his authority for the time being would distinctly appear.

It being the opinion of the court, that the deputy collector, who assumed to act in this case, was not duly authorized, it results that the preliminary steps, which are made necessary by law to be taken, prior to the sale of the land for the nonpayment of taxes, imposed under the authority of the United States, not having been legally pursued in the case before us, the title, derived from the sale, is not sustained. According to the agreement of the parties, the tenant is to be defaulted, and

*Judgment rendered for the demandants.*